**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF INDIANA**

| | | |
|---|---|---|
| SHAMBAUGH & SON, L.P., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.   1:23-cv-00213 |
| v. | ) | |
| | ) | |
| MATTHEW REICHHART, | ) | |
| ERIC HITE, and | ) | |
| BOBBY ELLIOTT, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

---

### COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

---

Plaintiff Shambaugh & Son, L.P. ("Shambaugh"), for its Complaint for Injunctive Relief and Damages against Defendants Matthew Reichhart, Eric Hite, and Bobby Elliott, hereby alleges and states as follows:

### PARTIES

1.      Shambaugh is a Texas limited partnership with its principal place of business at 7614 Opportunity Drive, Fort Wayne, IN 46825.  Shambaugh is a leading mechanical, electrical, and plumbing contractor.

2.      Matthew Reichhart is a citizen of Indiana domiciled at 10223 E 500 S Laotto, IN 46763.

3.      Eric Hite is a citizen of Indiana domiciled at 10522 Lagoon Drive, Grabill, IN 46741.

4.      Bobby Elliott is a citizen of Indiana domiciled at 9303 E 150 N, Rome City, IN 46784.

## JURISDICTION AND VENUE

5.      Subject-matter jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331, as this action arises in part under the federal Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*, and pursuant to 28 U.S.C. § 1367 because all supplemental state law claims arise out of the same case or controversy as the federal claims over which this Court has original jurisdiction.

6.      This Court has personal jurisdiction over Reichhart, Hite, and Elliott because each is a resident of Indiana.

7.      Venue is appropriate in this District as all individual Defendants reside in this District, and all (or substantially all) of the events or omissions giving rise to the claims set forth in this Complaint occurred in this District.

8.      Reichhart and Hite each executed an Alternative Dispute Resolution Agreement with Shambaugh in which they agreed to submit to arbitration all disputes arising out of or relating to their employment or termination of employment with Shambaugh. That Agreement permits Shambaugh to seek preliminary injunctive relief in connection with such disputes. Therefore, Shambaugh seeks such injunctive relief with respect to Reichhart and Hite but only pursues monetary relief in this Court with respect to the claims against Elliott.  As to Shambaugh's claims for damages against Reichhart and Hite, arbitration shall be initiated in the immediate future.

## FACTUAL ALLEGATIONS

### A. Shambaugh & Son, L.P.'s Business and Employment of the Defendants.

9.      Shambaugh repeats and realleges each and every allegation set forth in the paragraphs above as if fully set forth herein.

10.     Shambaugh is a mechanical, electrical, and plumbing construction services contractor in Indiana and has been in business since 1926.

11.     Shambaugh manages a Refrigeration Group that designs, builds, commissions, and services large, centralized industrial refrigeration systems for process cooling and storage applications.

12.     Reichhart was employed by Shambaugh as its Refrigeration Sales Manager until October 14, 2023.

13.     Hite was employed by Shambaugh as its Refrigeration Service Manager until November 16, 2023.

14.     Elliott was employed by Shambaugh as a Refrigeration Engineer until November 23, 2023.

**B.  Shambaugh & Son, L.P.'s Confidential Trade Secret Information.**

15.     Reichhart, Hite, and Elliott were highly compensated, trusted professional employees of Shambaugh, and were entrusted by Shambaugh with substantial confidential trade secret information of Shambaugh to perform their job duties.

16.     The confidential trade secret information Reichhart, Hite, and Elliott had access to includes, but is not limited to engineering and estimating information, including estimate sheets, calculation spreadsheets, AutoCAD details, code and reference material, customer standards, detailed estimating spreadsheets, piping and insulation specifications, estimating assemblies and shortcuts, equipment pricing books, and regulatory requirement calculation sheets, all constituting confidential trade secrets.

17.     The trade secret information Reichhart, Hite, and Elliott had access to also includes, but is not limited to customer information, including customer contacts, service and small job quote information, service reports, plant system drawings, refrigeration price books, preventative

3

maintenance agreements, and process safety management documentation, all constituting confidential trade secrets.

18.   To protect and preserve its confidential trade secret information, Shambaugh uses firewalls, antivirus software, intrusion protection and detection systems, encryption mechanisms, physical safeguards, and routine server backups.  Shambaugh further protects such information through the use of employment policies and procedures.

19.   For example, Shambaugh maintains employment policies that protect its confidential trade secret information, including its Code of Business Conduct and Ethics that reads: "[a]ll employees should protect the Company's assets" and the "Company's assets, whether tangible or intangible, are to be used only by authorized Employees or their designees and only for the legitimate business purposes of the Company" and "[e]mployees must maintain and protect the confidentiality of all Confidential Information" and "shall not disclose (even to family members) or use any Confidential Information for any purpose other than on a 'need to know' basis for the legitimate business purposes of the Company."

20.   Shambaugh's confidential trade secret information provides it with a business advantage over competitors that do not have access to, or knowledge of, the confidential trade secret information.

C.   **Reichhart, Hite, and Elliott Misappropriate Confidential Trade Secret Information And Compete With Shambaugh While Still Employed.**

21.   Within weeks of each other, Reichhart, Hite, and Elliott all abruptly resigned their employment with Shambaugh to work for G & L Corporation and start a competing refrigeration enterprise.

22.     In the process of leaving Shambaugh and beginning employment with G & L Corporation, Reichhart, Hite, and Elliott each misappropriated Shambaugh confidential trade secret information.

23.     Specifically, in the weeks, days, and even hours leading up to their departure from Shambaugh, Reichhart, Hite, and Elliott each accessed Shambaugh confidential trade secret information on Shambaugh's network that each had no business reason to access at that time.

24.     Between October 3 and October 10, 2022, Reichhart accessed dozens of confidential trade secret files on Shambaugh's network. These files included Shambaugh customer information, customer proposals and Shambaugh refrigeration price books. Specifically, Reichhart accessed confidential trade secret customer information pertaining to Lineage Logistics and Kraft on October 3rd, Toft Dairy and Routh Packing on October 4th, and Lineage Logistics on October 10th.

25.     Reichhart also accessed Shambaugh's price books and customer proposal documents on October 4th.

26.     Reichhart had no business reason to access some or all of these files in the final days of his employment.

27.     Between November 1 and November 16, 2022 -- his last day at Shambaugh -- Hite accessed dozens of confidential trade secret files on Shambaugh's network. These files included Shambaugh customer information such as customer contacts, services and small job quotes, service reports, plant system drawings, and PSM documentation.

28.     Specifically, Hite accessed confidential trade secret customer information pertaining to Reiter Dairy on November 1st, Routh Packing and Sofo Foods on November 3rd, Penske, Schenkel Diary, Sofo Foods, and PFG on November 7th, Plumrose on November 8th,

Schenkel Dairy, PFG, MMPA, and Reiter Dairy on November 9th, PFG, Swift Foods, Plumrose, Schenkel Dairy, and Wolverine Packing, on November 10th, Penske, Wolverine Packing, AEC-Blueline, and Trine Ice Rink on November 11th, Supervalu, Crystal Lake Egg, and House of Flavors on November 14th, Crystal Lake Egg, Bio Pharma Logistics, Plumrose, and Air Products on November 15th, and then Routh Packing, PFG, and Americold on November 16th.

29.    Since Hite's departure from Shambaugh and employment by G & L Corporation, it is believed that G & L Corporation has secured work from several of the above mentioned Shambaugh customers, including PFG, Routh Packing, Air Products, Crystal Lake Egg, Trice Ice Rink, Wolverine Packing, and Penske.

30.    Hite also accessed Shambaugh's price books on November 7th, service work quote forms on November 16th, Shambaugh's PM tasking sheet on November 11th, and Shambaugh's service rates and service report documentation on November 15th, which details all of the tasking and issues Shambaugh found on each service visit in 2022. All constitute Shambaugh's confidential trade secret information.

31.    On November 16, 2022 -- his last day at Shambaugh -- Hite accessed nearly two dozen confidential trade secret files between 7:32 AM and 7:34 AM, at 8:28 AM, between 9:48 AM and 9:50 AM, and again between 10:02 AM and 10:17 AM.  Hite's rapid access to numerous files containing trade secret information on his last day of employment is extremely telling.

32.    Further, Hite had no business reason to access several of these files. Indeed, several were located in a folder under Reichhart's name, though Reichhart had left Shambaugh in mid-October and worked in sales, while Hite worked in service. Further, Hite did not perform any work for Shambaugh for a customer known as Crystal Lake Egg and had no business reason to access any information associated with that customer.   Hite was accessing files related to customers that

6

had been serviced by Reichert immediately before joining Reichert at G & L.  The implication is clear.

33.    On November 22, 2022, one day before his departure from Shambaugh, Elliott quickly accessed roughly two dozen confidential trade secret files on Shambaugh's network. These files included Shambaugh estimate sheets and calculation spreadsheets used to support customers and Shambaugh's engineering/estimating efforts, as well as other Shambaugh codes and reference material, customer standards, piping and insulation specifications, estimating assemblies, and Shambaugh's calculation sheets used to meet regulatory requirements.

34.    The files accessed by Elliott account for thousands of engineering hours and substantial monetary investment. Elliott accessed these files in rapid succession between 1:38 PM and 2:05 PM, and then again at 4:14 PM, on November 22nd.

35.    Elliott then accessed additional statement of work and proposal documents on November 23, 2022 at 7:48 AM -- his last day of work at Shambaugh.

36.    Elliott had no business reason to access some or all of these files on the eve of his separation from Shambaugh. Further, Elliott's behavior was highly suspicious as he asked to work from home during his final week of work, did very little actual work, and refused to attend a coordination meeting, but was then seen in the building after hours and appeared startled when he was discovered.

37.    On information and belief, and subject to a reasonable opportunity for investigation and discovery, Reichhart, Hite, and Elliott copied, downloaded, uploaded, or otherwise retained that Shambaugh confidential trade secret information, did not return it to Shambaugh, and took it with them to G & L Corporation after their employment with Shambaugh ended.

38.    For example, Reichhart began researching G & L Corporation on his Shambaugh-issued device in August 2022.  Between August 2022 and his resignation two months later, he searched for "outlook convert email to pdf" the day before a USB device was connected to his company-owned computer.  That USB device was not returned to Shambaugh.

39.    In the weeks leading up to Hite's resignation, Hite connected six different USB devices to his Shambaugh-owned computer, including one just two days before his departure.  Some or all of these devices contained Shambaugh confidential trade secret information. None were returned to Shambaugh.

40.    In the weeks leading up to Elliott's resignation, Elliott connected a USB device to his Shambaugh-owned computer.  That USB device contained Shambaugh's confidential trade secret information. That USB device was also not returned to Shambaugh.

41.    Shambaugh's Electronic Communication Policy dictates that Shambaugh's "electronic communication system should not be used to send (upload) or receive (download) . . . trade secrets, proprietary financial information, or similar materials without prior authorization."

42.    Reichhart, Hite, and Elliott received G & L Company e-mail addresses, performed services for G & L Corporation, diverted business from Shambaugh customers to G & L Corporation, and/or otherwise competed with Shambaugh, while still employed by Shambaugh.

43.    For example, while still employed, Hite contacted a Shambaugh customer, AEC-Blueline, who had hired Shambaugh to perform work that included replacing parts. Hite told the customer he was leaving and that he would release the parts to them so they could have a different provider perform the installation. Shambaugh learned of this unapproved decision after Hite left for G & L Corporation.  It is believed G & L Corporation then pursued this work.

8

44.     Shambaugh's Code of Business Conduct and Ethics dictates, "[n]o Employee may use Company property, information, or such Employee's position for improper personal gain and no Employee may compete with the Company, directly or indirectly. Employees owe a duty to the Company to advance its legitimate interests when the opportunity to do so arises."

45.     Reichhart, Hite, and Elliott each deleted the entirety of certain company-issued electronic devices at the time of their resignation, despite a requirement in Shambaugh's employee handbook requiring each, when leaving the company, to "return all Company equipment and other property as well as all Company Confidential information".

46.     On information and belief, Reichhart, Hite, and/or Elliott solicited their coworkers and subordinates, including one another, to leave their employment and join G & L Corporation while still holding a position of authority with Shambaugh and remaining on Shambaugh's payroll.

47.     Reichhart, Hite, and Elliott were each compensated by Shambaugh up through his last day of employment with Shambaugh.

48.     In summary, Reichhart, Hite, and Elliott accessed dozens of confidential files for no legitimate business reason immediately before leaving for a competitor, retained numerous USB devices containing additional confidential information, and deleted the contents of their company issues devices.

   D. **Reichhart, Hite, and Elliott Build a Competing Refrigeration Business at G & L Corporation, with Shambaugh's Confidential, Trade Secret Information.**

49.     G & L Corporation has recently started a competing refrigeration division staffed with several former Shambaugh employees.

50.     Reichhart is now employed as G & L Corporation's Vice President, Mechanical & Refrigeration Division.

51.     Hite is now employed as G & L Corporation's Service Manager, Mechanical & Refrigeration Division.

52.     Elliott is now employed as G & L Corporation's Director of Engineering, Mechanical & Refrigeration Division.

53.     Additional Shambaugh refrigeration employees also left for G & L, including Derrick Grotrian, Courtland Potter, Gary Williams and Tyler Leffers.

54.     G & L Corporation's Mechanical & Refrigeration Division competes with Shambaugh's refrigeration business.

55.     On information and belief, and subject to a reasonable opportunity for investigation and discovery, after joining G & L, Reichhart, Hite, and Elliott as employees of G & L Corporation further misappropriated the confidential, trade secret information they obtained from Shambaugh.

56.     Reichhart, Hite, and Elliott, on behalf of G & L Corporation, aggressively targeted Shambaugh customers and prospects armed with confidential information and knowledge gained from Shambaugh.

57.     Within weeks of Reichhart, Hite, and Elliott leaving employment with Shambaugh, they targeted and undercut Shambaugh on multiple key opportunities with Shambaugh customers or prospects, including opportunities where they were able to secure the business on G & L Corporation's behalf.

58.     Subject to a reasonable opportunity for investigation and discovery, business lost by Shambaugh as a result of the misappropriation of confidential trade secret information by Defendants includes PFG, Routh Packing, Air Products, Crystal Lake Egg, Trine Ice Rink, Wolverine Packing, Penske, and others.

59.    Subject to a reasonable opportunity for investigation and discovery, Reichhart, Hite, and Elliott utilized Shambaugh confidential trade secret information, detailed above, in converting that business for G & L Corporation's benefit and at Shambaugh's expense.

60.    Shambaugh stands little chance of retaining customers and competing in the marketplace if Defendants are allowed to misappropriate Shambaugh trade secrets in violation of federal law.

61.    Unless the Defendants' conduct is stopped, Shambaugh will continue to suffer additional irreparable harm to its customer relationships that monetary damages cannot adequately repair.

62.    Before filing suit, Shambaugh twice sought assurances from Reichhart, Hite, and Elliott that each would honor his duty to respect Shambaugh's trade secret information. Shambaugh received no assurances from the individuals.

## COUNT I
## TRADE SECRET MISAPPROPRIATION AGAINST ALL DEFENDANTS
### (18 U.S.C. §§ 1832, 1836 *et seq*.)

63.    Shambaugh repeats and realleges each and every allegation set forth in the paragraphs above as if fully set forth herein.

64.    Shambaugh has developed, owns, and possesses confidential trade secret information, as alleged and described above.

65.    Shambaugh makes substantial efforts to keep this information secret from its competitors and the public.  At all relevant times, Shambaugh has taken reasonable efforts to maintain the secrecy of its confidential trade secret information, as described above.

66.    Shambaugh has invested substantial resources in developing its confidential trade secret information.  Such confidential information therefore derives independent economic value,

actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

67.     Shambaugh's confidential trade secret information set forth above constitute trade secrets under the Defend Trade Secrets Act, 18 U.S.C. §§ 1832, 1836, *et seq.*

68.     Under the Defend Trade Secrets Act, 18 U.S.C. §§ 1832, 1836, *et seq.*, Reichhart, Hite, and Elliott each has a duty not to misappropriate trade secret information.

69.     Reichhart, Hite, and Elliott each misappropriated and/or threatened to misappropriate Shambaugh trade secrets for his benefit and for the benefit of his new employer, G & L Corporation.  Moreover, Reichhart, Hite, and Elliott each acquired and/or derived knowledge and custody of Shambaugh's trade secrets through improper means, and, on information and belief, has disclosed those trade secrets to others, including his new employer, G & L Corporation.  As such, Reichhart, Hite, and Elliott misappropriated Shambaugh's trade secrets.

70.     Through his actions, Reichhart, Hite, and Elliott each used, acquired, derived and/or disclosed Shambaugh's trade secret information via improper means, as alleged herein.

71.     Reichhart, Hite, and Elliott each knew or had reason to know that Shambaugh's trade secret information was confidential.

72.     Subject to a reasonable opportunity for investigation and discovery, Reichhart, Hite, and Elliott each misappropriated Shambaugh trade secret information and used the same to divert business at Shambaugh's expense.

73.     Subject to a reasonable opportunity for investigation and discovery, Reichhart, Hite, and Elliott's conduct, including but not limited to their knowing and unlawful misappropriation of Shambaugh's trade secrets as alleged above, has caused Shambaugh

12

irreparable injury. Unless restrained and enjoined, Reichhart, Hite, and Elliott each will continue to engage in such acts. Shambaugh's remedy at law is therefore inadequate to compensate it for the past and threatened injuries and thus Shambaugh is entitled to injunctive relief as provided for by the Defend Trade Secrets Act, 18 U.S.C. § 1836(b)(3)(A).

74.    Shambaugh is also entitled to and prays for all other remedies available under the Defend Trade Secret Act, 18 U.S.C. § 1836, including damages pursuant to 18 U.S.C. § 1836(b)(3)(B). It seeks those remedies against Elliott in this action and will seek those remedies against Reichhart and Hite via arbitration pursuant to their respective agreements.

75.    Each of the aforementioned acts was done willfully and maliciously, with the deliberate intent to injure Shambaugh and with the conscious disregard of Shambaugh's rights. Shambaugh is entitled pursuant to 18 U.S.C. § 1836(b)(3)(D) to an award of its reasonable attorneys' fees.

## COUNT II
## BREACH OF DUTY OF LOYALTY AGAINST ALL DEFENDANTS[1]

76.    Shambaugh repeats and realleges each and every allegation set forth in the paragraphs above as if fully set forth herein.

77.    Reichhart, Hite, and Elliott each owed Shambaugh, as its employee and Sales Manager, Service Manager, and Engineer, respectively, a duty of loyalty.

78.    Reichhart, Hite, and Elliott each breached that duty of loyalty by performing services for G & L Corporation, diverting business from Shambaugh customers to G & L Corporation, deleting information from Shambaugh's devices, accessing Shambaugh's

---

[1] Shambaugh is cognizant of the fact that an employee's duty of loyalty ordinarily ends at the conclusion of employment. However, the advantage Defendants gained by their disloyal conduct (in addition to their misappropriation of trade secrets) may still warrant injunctive relief now.

confidential information for no legitimate business purpose, and/or otherwise competing with Shambaugh on G & L Corporation's behalf, all while still employed by Shambaugh.

79.    Shambaugh has been damaged as a result of Reichhart, Hite, and Elliott's breach of said duty of loyalty.

**WHEREFORE**, Plaintiff Shambaugh & Son, L.P. demands judgment against Reichhart, Hite, and Elliott as follows:

(i) enjoin Reichhart, Hite, and Elliott, and those acting in concert with them, from misappropriating Shambaugh's trade secret information;

(ii) award damages in favor of Shambaugh and against Elliott for all damages stemming from his misappropriation of trade secrets;

(iii) award damages in favor of Shambaugh and against Elliott for all damages stemming from his breach of duty of loyalty; and

(iv) award attorneys' fees and costs in favor of Shambaugh and against Reichhart, Hite, and Elliott as set forth in 18 U.S.C. § 1836(b)(3)(D).

## JURY DEMAND

Shambaugh requests a jury trial on all issues so triable.

Dated: May 25, 2023

Respectfully submitted,

**BARNES & THORNBURG LLP**

*/s/ Jason T. Clagg*
Jason T. Clagg (Atty No. 24123-02)
(jason.clagg@btlaw.com)
Mitchell R. Berry (Atty No. 36367-02)
(mitchell.berry@btlaw.com)
888 South Harrison Street, Suite 600
Fort Wayne, IN  46802
Telephone:  (260) 423-9440
Facsimile:  (260) 424-8316

Thomas C. Payne (Atty No. 34727-49)
(thomas.payne@btlaw.com)
11 South Meridian Street
Indianapolis, IN  46204
Telephone:  (317) 261-7852
Facsimile:  (317) 231-7433

*Attorneys for Plaintiff*
*Shambaugh & Son, L.P.*