**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | |
|---|---|
| SHAMBAUGH & SON, L.P., | |
| Plaintiff, | |
| v. | CASE NO. 1:23-CV-213-HAB |
| MATTHEW REICHHART, et al., | |
| Defendants. | |

## OPINION AND ORDER

On April 10, 2025, after hearing oral argument, Magistrate Judge Susan Collins granted in part and denied in part a motion to compel production of documents (ECF No. 116) filed by Plaintiff Shambaugh & Son, L.P. ("Shambaugh") and ordered Individual Defendants Matthew Reichhart, Eric Hite, and Bobby Elliott (collectively "Defendants") to produce the requested discovery documents, consisting of text messages and other cellular data. (ECF No. 131). At that time, the Court directed Shambaugh to file an affidavit in support of its request for attorney fees and expenses incurred in litigating the motion to compel pursuant to Federal Rule of Civil Procedure 37(a)(5)(A). (ECF No. 132).

Now before the Court is Shambaugh's petition for attorney fees (ECF No. 139). Defendants oppose the award of fees based on the motion to compel being "a wash" and that Shambaugh's requested amount—$37,384.70—is categorically unreasonable and many of the billed time entries are duplicative, vague, or excessive, among other complaints. (ECF No. 146). In reply, Shambaugh defended the reasonableness of its requested fees but conceded that some entries were improperly block-billed and thus reduced its total request to $34,752.45. (ECF No. 151).

Magistrate Judge Andrew Teel—who took over the case following Judge Collins's retirement—held a hearing on the fees petition on September 10, 2025, and ordered additional briefing to allow Defendants the opportunity to address with particularity the allegedly unreasonable time entries. (ECF No. 155). Defendants took that opportunity by the reins, filing a whopping 46-page supplemental brief in which they individually object to all but 4 of Shambaugh's 85 separate time entries. (ECF No. 168). Shambaugh upped the ante in response, not only defending its original fees amount but also requesting an additional $18,247.50 for the work its attorneys completed in preparing the supplemental response brief as well as preparing for and attending the fees hearing, making the total requested fees $52,999.95. (ECF No. 170). Defendants' Reply argues the new amount "shocks the conscience" even more than the original request and that Shambaugh is not entitled to "fees on fees." (ECF No. 171). The issue is now well-ripe for ruling.

For the following reasons, the Court will grant Shambaugh's fee petition in part, reducing the time spent in litigating the motion to compel to result in a fee award of $9,486.90.

## I.      Factual and Procedural Background

This contentious trade secrets case arises from the departure of Defendants Reichhart, Hite, and Elliott from their employment with Plaintiff Shambaugh & Son, L.P. to work for Defendant G&L Corporation[1] in 2022. With respect to the instant fees petition, in January 2025 Shambaugh filed a Motion to Compel production of text messages and other phone data from the Individual Defendants because the previous production suffered from major deficiencies, including the failure to produce messages from the most critical time period as originally requested, as well as the

---

[1] Because G&L is not involved in this discovery dispute, any further use of "Defendants" in this Order refers only to the Individual Defendants Reichhart, Hite, and Elliot.

2

failure to include metadata among other basic, necessary information. (ECF No. 117 at 7). Importantly, Defendants' original production was thousands of pages of screenshots of text messages in an unsearchable PDF format. (*Id.* at 5). After oral argument on the matter, Magistrate Judge Collins granted in part and denied in part Shambaugh's Motion, denying only to the extent that she did not require Defendants turn over their phones to a third-party vendor. (ECF No. 131). Shambaugh's Motion also included a request for Rule 37(a)(5)(A) attorney fees incurred in bringing the motion (ECF No. 117 at 12), for which Magistrate Judge Collins ordered Shambaugh's attorney to file an affidavit in support (ECF No. 132).

Shambaugh's fee petition comes in the form of a Declaration of Attorney Zach Barron filed on June 3, 2025 (ECF No. 139) which includes a spreadsheet tabulating recoverable fees that details the hours expended in preparing the motion to compel and the subsequent hearing (ECF No. 139-1). Barron's Declaration explains why the requested fee is reasonable: the original production by Defendants were screenshots of messages in a large, unsearchable PDF format which required counsel "to manually review each page of the deficient PDFs, approximately 2,128 pages" before counsel could send an adequate deficiency letter; Defendants' supplemental production continued to be in an unsearchable format and missed critical communications and metadata; and the subsequent efforts expended in drafting, filing, and arguing the motion to compel by Shambaugh's attorneys and supporting staff was substantial. (ECF No. 139 at 2–3). At that time, Shambaugh requested 104.2 billed hours spread between various attorneys and a paralegal totaling $37,384.70. (*Id.* at 3).

Defendants filed a response in opposition to the fee petition on July 1, 2025, arguing that Shambaugh's petition should be denied in its entirety because (a) Shambaugh was only partially successful in its Motion to Compel; (b) Defendants' discovery response and objections were

substantially justified; and (c) Shambaugh's request of over $37,000 for a ten-page motion to compel "shocks the conscience." (ECF No. 146). Should the Court grant Shambaugh's request, however, Defendants object to the requested fees given that many of the time entries are allegedly vague, excessive, or not directly related to the motion to compel. (*Id.* at 12–15).

In its Reply, Shambaugh counters that while the Motion to Compel was only granted in part, it nevertheless "received the complete relief it sought—a fulsome production of text messages, inclusive of metadata, call logs, and other cell phone data," and that the only relief denied was imaging by a neutral third-party forensic vendor. (ECF No. 151 at 4). Shambaugh also argues Defendants were not substantially justified in opposing discovery and further asserted that its request for fees was reasonable and defending the detail of the time entries. (*Id.* at 10–11). That said, Shambaugh recognized that some time entries were block billed and voluntarily reduced the billed time for 11 entries for a total reduction of $2,632.25, with a new total requested fees of $34,752.45. (*Id.* at 14).

On September 10, 2025, Magistrate Judge Andrew Teel held a Motion Hearing at which counsel for both sides appeared and presented arguments on attorney fees. Given the number of time-entry objections lodged by Defendants, Magistrate Judge Teel ordered the parties to provide supplemental briefing for Defendants to offer detailed objections to specific time entries. (ECF No. 155). In their 46-page supplemental brief, Defendants rehash much of their earlier arguments—though for the first time argue Shambaugh has not established the reasonableness of the attorneys' hourly rates—and note their objections to all but four of Shambaugh's 85 billed time entries. (ECF No. 168). Generally, those objections fall into the following categories: (1) excessive time and duplicative work; (2) vague time entries; (3) block billing and work unrelated to the Motion to Compel; and (4) billed hours for the paralegal and other allegedly unrecoverable fees.

In response, Shambaugh not only rebuts Defendants' objections on reasonableness, relatedness, excessiveness, and vagueness, but also now requests $18,247.50 in additional fees incurred in litigating the fee petition, including preparing the fee petition, attending the Motion Hearing, and responding to the extensive objections in the supplemental briefing, ultimately leading to a total requested fees amount of $52,999.95. (ECF No. 170). Defendants argue in reply that this new amount "shocks the conscience" even more so than the previous request and should be denied outright, that the block billed entries should be stricken or substantially reduced, and that the local legal market of Fort Wayne—which Defendants contend should apply without citation to legal authority—has significantly lower market rates. (ECF No. 171). Finally, Defendants assert Shambaugh is not entitled to "fees on fees" for this additional work and lists objections to the time entries in Shambuagh's additional fees request along generally the same lines—excessive time, vagueness, block billing, and duplicative or unrelated work. (*Id.*).

## II.   Legal Standard

Federal Rule of Civil Procedure 37(a) governs the imposition of expenses and sanctions related to a motion to compel. It provides, in pertinent part:

(a) Motion for an Order Compelling Disclosure or Discovery.

> (1) *In General*. On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.

. . . .

> (5) *Payment of Expenses; Protective Orders*.

>> (A) . . . If the motion is granted–or if the disclosure or requested discovery is provided after the motion was filed–the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the

movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:

> (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;

> (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or

> (iii) other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a).

This Rule "presumptively requires every loser to make good the victor's costs . . . ." *Rickels v. City of S. Bend*, 33 F.3d 785, 786 (7th Cir. 1994) (citation omitted). Such fee-shifting "encourages . . . voluntary resolution" of discovery disputes and "curtails the ability of litigants to use legal processes to heap detriments on adversaries (or third parties) without regard to the merits of the claims." *Id.* at 787. Accordingly, "the loser pays" unless he establishes "that his position was substantially justified." *Id.* at 786-87.

"Reasonable attorney fees under Rule 37 are calculated using the 'lodestar' method, which is a reasonable hourly rate multiplied by the hours reasonably expended." *L.H.H. ex rel. Hernandez v. Horton*, No. 2:13-CV-452-PRC, 2015 WL 1057466, at *1 (N.D. Ind. Mar. 10, 2015) (citing *Johnson v. GDR, Inc.*, 668 F.3d 927, 929 (7th Cir. 2012); *Gautreaux v. Chi. Hous. Auth.*, 491 F.3d 649, 659 (7th Cir. 2007)). "A reasonable rate is one 'derived from the market rate for the services rendered.'" *Id.* (quoting *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011)). "The Court must also determine whether an attorney's requested award is for hours reasonably spent." *Zimmer, Inc. v. Beamalloy Reconstructive Med. Prods., LLC*, No. 1:16-cv-00355-HAB-SLC, 2019 WL 2635944, at *4 (N.D. Ind. June 27, 2019) (citing *Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 554 (7th Cir. 1999)). "Ultimately, the party seeking an award of attorneys' fees bears the burden of proving the reasonableness of the hours worked and the hourly rates

6

claimed." *Bratton v. Thomas L. Firm, PC*, 943 F. Supp. 2d 897, 902 (N.D. Ind. 2013) (citing *Spegon*, 175 F.3d at 550).

### III.   Analysis

#### A.   *Shambaugh & Son will be awarded its reasonable fees and expenses*

As explained above, the Court granted in part and denied in part Shambaugh's motion to compel, denying only to the extent that the Defendants would not be forced to turn their phones over for a third-party forensic examination. Under Federal Rule of Civil Procedure 37, if a motion to compel is granted in part and denied in part, the Court may "apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C). In deciding whether to apportion expenses the Court considers "the relative degree of success of the party seeking fees and whether the losing party's position was substantially justified." *Hernandez v. RN Staff, Inc.*, No. 1:19-cv-3203, 2022 WL 22881774, at *1 (S.D. Ind. Nov. 3, 2022). Though Defendants argue this partial grant/deny amounts to "a wash," with both parties having some success (ECF No. 146 at 3), the Court agrees with Shambaugh that it was successful in all material respects, receiving the substantive information it sought despite the Court's denial of Shambaugh's proposed *method* of producing that information. Thus, under Rule 37(a), Defendants must pay Shambaugh's reasonable fees and expenses unless Defendants can show their position was "substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(B).

Defendants contend that Shambaugh's fee petition should be denied in its entirety because their response and objection were substantially justified. (ECF No. 146 at 3–9). Under Rule 37(a)(5)(A)(ii), a party's resistance to discovery is "substantially justified" when there is "a genuine dispute." *Rackemann v. LISNR, Inc.*, No. 1:17-cv-00624-MJD-TWP, 2018 WL 3328140, at *3 (S.D. Ind. July 6, 2018) (citations omitted). Put another way, resistance is substantially

justified "if reasonable people could differ as to the appropriateness of the contested action." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citations and brackets omitted). Defendants argue they were substantially justified in their opposition to discovery for two reasons: (1) Shambaugh never specifically asked for metadata in its discovery request and the Federal Rules do not require automatically turning over metadata; and (2) submitting personal cell phones to a forensic examiner would be overly intrusive. Defendants point to a portion of Shambaugh's First Set of Discovery Requests as evidence that metadata was never requested:

> **REQUEST NO. 3**: All documents, correspondence, and communications that refer or relate to Shambaugh or its Clients. A complete response would include, but not be limited to, records found in cellular telephones or backups of same (e.g., iCloud), the contents of cloud storage accounts (e.g., Dropbox, Google Drive), personal or work email accounts (e.g., gMail, yahoo), and USB storage devices as well as paper records.

(ECF No. 117-3 at 11).

Defendants may have a point that metadata was never specifically requested, and, as Magistrate Judge Collins pointed out in the motion hearing, the Court agrees that submitting personal cellphones to a third-party forensic analysis would be unduly intrusive—hence why that portion of Shambaugh's motion to compel was denied. But Defendants focus on the branches of the trees rather than the forest and seem to ignore the basic requirements of Rule 34 production of electronically stored information ("ESI").

The heart of this discovery dispute is not the lack of metadata—though that is certainly a hefty portion of the problem—but the deficient production of messages both in form and in substance. First, Defendants failed to comply on a procedural level by neglecting "to specify in advance of production the form in which the requested information will be produced." *Scotts Co. LLC v. Liberty Mut. Ins. Co.*, 2:06-CV-899, 2007 WL 1723509, at *4 (S.D. Ohio June 12, 2007); *MC Asset Recovery, LLC v. Castex Energy, Inc.*, 4:07-CV-076, 2012 WL 12919263, at *6 (N.D.

Tex. April 26, 2012) ("Rule 34 rests the ultimate burden of specifying the format of the ESI production on the party producing the documents."). Shambaugh's request for production of documents did not appear to specify a form for producing ESI, meaning it was Defendants' burden under Rule 34(b)(2)(D) to specify the format of production. Instead, Defendants denied having any documents in response to this request, only to months later supplement their response by providing the first round of screenshot PDFs. *See* ECF No. 117-3. After much back and forth over whose responsibility it was to produce the messages—the individual defendants or their employer G&L—Shambaugh sent Defendants a deficiency letter outlining the incomplete, inadequate nature of the PDF production, including the lack of essential identifying information for the messages (though not referred to as "metadata"), *see* ECF No. 117-4, to which Defendants produced nearly a thousand more pages of unsearchable screenshot PDFs.

Had Defendants complied with Rule 34's notification requirement and announced its intent to produce the messages in a series of screenshots—some cut off and others without any identifying dates—compiled en masse into unsearchable PDFs, it is reasonable to infer that much of this back and forth over the course of a year would have been avoided because Shambaugh, through its experienced attorneys, would have objected and asked for the ESI in its native format. Instead, Defendants continued to produce unsearchable, inadequate PDFs, wasting valuable time and resources. *See Haywood v. Wexford Health Sources, Inc.*, 2021 WL 2254968, at *9 (N.D. Ill. June 3, 2021) ("And while the Court recognizes that plaintiff's RFPs did not specify the form in which he wanted Wexford to produce the ESI, the Rules did not obligate plaintiff to do so–though they did obligate Wexford to notify plaintiff of the form that its ESI production would take."); *see also* Fed. R. Civ. P. 34(b) Advisory Committee's Note to 2006 Amendment ("Stating the intended form before the production occurs may permit the parties to identify and seek to resolve disputes

9

before the expense and work of the production occurs. A party that responds to a discovery request by simply producing electronically stored information in a form of its choice, without identifying that form in advance of the production in the response required by Rule 34(b), runs a risk that the requesting party can show that the produced form is not reasonably usable and that it is entitled to production of some or all of the information in an additional form.").

Second, and more importantly, at no point in the significant briefing of this dispute—at the motion to compel or now the attorney fees stages—have the Defendants ever established or even attempted to argue that their production of these unsearchable PDFs complied with Rule 34 requirements. Though the parties have not provided, and the Court has been unable to find, Seventh Circuit caselaw with text messages produced in this particular format, cases involving lack of metadata and unsearchable PDF production of requested Excel spreadsheets or emails are sufficiently analogous for the Court to find this kind of production was inadequate. *See, e.g.*, *Haywood*, 2021 WL 2254968, at *10 ("Wexford's opposition brief does not meaningfully address the two primary effects of its decision to convert the spreadsheets from Excel to PDF format: it significantly degraded the usability and functionality of the ESI, . . . and large portions of the spreadsheet are not readable."). The question of whether Shambaugh specifically requested metadata is irrelevant where, as here, vital identifying information such as dates and contact information are inaccessible and the produced document is unduly burdensome to handle. Further, Defendants cannot now assert that the identifying information for these messages is unimportant— as Shambaugh points out, during a deposition Defendants objected to the use of the discovery *they produced* on the basis that the messages did not include the full date. (ECF No. 117-1 at 101). It was readily apparent that the PDFs were unsearchable, and as Shambaugh noted in its deficiency letter and motion to compel, there had not been a sufficient substantive production because the

PDFs lacked any messages sent during the crucial "Red Zone" period during which Defendants were both employed by Shambaugh and committed to G&L. *See* ECF No. 117-4.

Overall, this appears to be precisely the situation envisioned by the 2006 Advisory Committee when amending Rule 34(b). *See* Fed. R. Civ. P. 34(b) Advisory Committee's Note to 2006 Amendment ("If the responding party ordinarily maintains the information it is producing in a way that makes it searchable by electronic means, the information should not be produced in a form that removes or significantly degrades this feature."). The Court has no trouble concluding that there is no genuine dispute that thousands of pages of screenshotted messages in unsearchable PDF form while lacking basic identifying information are not reasonably usable for purposes of Rule 34(b)(2)(E)(ii). *See Indep. Mktg. Grp., Inc. v. Keen*, No. 3:11-CV-447-J-25MCR, 2012 WL 207032, at *3 (M.D. Fla. Jan. 24, 2012) ("Plaintiff's refusal to produce documents in an appropriate and usable format creates a significant disadvantage and prohibits Defendants from potentially discovering information that may be relevant to their defenses.").

The Court therefore finds no substantial justification for Defendants' position and Shambaugh is entitled to reasonable fees and costs.

### B. *Attorney Hourly Rates*

For the first time in their additional briefing, Defendants argue that the hourly rates billed by Shambaugh's attorneys are unreasonable because they are based on the market rate of substantially larger legal markets—big cities in the Midwest including Indianapolis—rather than the smaller market of Fort Wayne. (ECF No. 171 at 4–5). In its fee petition, Shambaugh listed its attorneys' rates as $325 for 2024 and $365 for 2025 (Mitchell Berry; Zach Barron) and $555 for 2024 and $575 for 2025 (Jason Clagg), and its paralegal's rates as $245 for 2024 and $260 for 2025 (Heather Mink). (ECF No. 139-1 at 8). With the additional fees requested in the supplemental

briefing, Shambaugh listed two new attorneys with 2025 rates of $355 (Chase Howard) and $510 (Steven Baldwin). (ECF No. 170-1 at 9).

Although it is Shambaugh's burden to show the requested fees are reasonable, "where, as here, attorneys provide the rates actually billed, the burden shifts to the party opposing the fee award to demonstrate why a lower rate should be awarded." *Zimmer, Inc. v. Beamalloy Reconstructive Med. Prods., LLC,* No. 1:16-cv-00355-HAB-SLC, 2019 WL 2635944, at *7 (N.D. Ind. June 27, 2019) (citations omitted); *see also Struve v. Gardner*, No. 1:19-cv-04581-RLY-MJD, 2021 WL 1948868, at *1 (S.D. Ind. May 14, 2021).

Defendants' market-rate assertion is unpersuasive. Defendants include no legal authority requiring the market-rate be calculated for the community in which the litigation or the Court is based, nor do they even attempt to provide support for what the Fort Wayne-based rate for these services would be beyond a single, one-sentence footnote relating to Defendants' counsel's alleged rates, nor do they ask the Court for any specific rate reduction. *See id.* ("[T]his court has repeatedly and consistently held that perfunctory and undeveloped arguments, as well as arguments that are unsupported by pertinent authority, are waived."); *White Eagle Coop. Ass'n v. Conner,* 553 F.3d 467, 476 n.6 (7th Cir. 2009) ("[I]t is not the province of the courts to complete litigants' thoughts for them . . . .").

With nothing else to go on, the Court must rely on Shambaugh's provided evidence that their proposed hourly rates for billable work completed in 2024 and 2025 are "in line with those prevailing in the community," *see Pickett*, 664 F.3d at 640 (citation omitted), and Defendants have not carried their burden of showing the Court otherwise. Defendants' objection to the hourly rates billed by Shambaugh is thus overruled.

### C. *Time Billed*

Finally, Defendants object to the time billed by Shambaugh's counsel. Given that Defendants lodged specific objections to approximately 80% of Shambaugh's 125 individual time entries, it is necessary to group these objections together by type of objection for efficiency. Accordingly, the types of objections Defendants lodge fall into four broad categories: (1) excessive time and duplicative work generally, but also specifically in drafting the motion to compel, including time spent reviewing the unsearchable PDFs in preparation for the deficiency letter as well as the preparation of the motion itself; (2) vague time entries or entries with improper "block billing," including work unrelated to the motion to compel; (3) other charged fees; and (4) the appropriateness of awarding "fees on fees" requested by Shambaugh in the additional briefing, including specific objections to the majority of the added time entries. The Court will address each category of objections in turn.

#### 1. Excessive Time and Duplicative Work

Defendants object to many of the time entries because they believe the entries reflect excessive and duplicative work. These objections can be sorted into four main tasks: (a) reviewing the unusable text-message PDFs; (b) drafting and revising the deficiency letter; (c) drafting, proofreading, and revising the motion to compel and related certification; and (d) preparing for, strategizing, and attending the motion to compel hearing.

"In determining the reasonable number of hours, the court should exclude hours that are 'excessive, redundant or otherwise unnecessary.'" *Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 708 (7th Cir. 2001) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). In doing so, the court must "provide a concise but clear explanation of its reasons for any reduction." *Id.* (citation and internal quotation marks omitted) ("[I]t is understandable that the judge would

assume that much of the more routine work would be delegated to competent attorneys in the firm who charge at a much lower hourly rate."). Additionally, a fee sanction should not include duplicate billing. While "efficiency can sometimes be increased through collaboration, overstaffing cases inefficiently is common, and district courts are therefore encouraged to scrutinize fee petitions for duplicate billing when multiple lawyers seek fees." *Schlacher v. Law Offices of Phillip J. Rotche & Assoc., P.C.*, 574 F.3d 852, 858 (7th Cir. 2009). "When multiple attorneys are simultaneously researching, preparing, and drafting a single motion, it will inevitably lead to unnecessary duplication, which the court must take account of in determining the hours reasonably expended." *Romary Assocs., Inc. v. Kibbi LLC*, 2011 WL 4948834, at *5 (N.D. Ind. Oct. 18, 2011). Moreover, "[t]ime spent on duplicative work or work consisting solely of communications among the various attorneys acting as co-counsel ... can not be allowed[.]" *Doe v. Howe Mil. Sch.*, 1996 WL 939352, at *4 (N.D. Ind. Oct. 16, 1996).

### *(a)* *Reviewing the PDFs*

In the process of responding to the initial production of the screenshotted-text PDFs and preparing the motion to compel, Attorney Barron billed a total of 36.6 hours between 7/22/24 and 1/3/25 categorized for reviewing the PDFs produced by Defendants, for which Shambaugh requests $11,895. *See* ECF No. 139-1 at 1–5. Defendants object to all time spent reviewing these text messages, given that it was "readily apparent that the text messages, which were initially produced in pdf format, were not produced in native format, which was the basis of the Plaintiff's Motion to Compel." (ECF No. 168 at 5).

The Court agrees. As discussed above, the unusable format of the messages was only a portion—albeit an important one—of the discovery battle here. Shambaugh's counsel attested in their briefing and at the multiple hearings that a significant portion of the motion to compel

concerned the lack of a substantive production of text messages from critical time periods, and to figure out the extent of that deficiency counsel had to spend a substantial amount of time reviewing the messages despite the unusable format. Further review, they argue, was required with the second PDF production and in preparation of the motion to compel, for an overall total of 36.6 hours of Attorney Barron's time.

The deficiency letter is substantially detailed, and an extensive review of the PDFs was likely required to produce that level of detail, but the Court cannot say that such detail was *required* for a three-page letter which essentially asked for all the phone records and messages originally requested to be produced in a usable format. Instead, it appears that much of this review should be attributed as document review required for general discovery and litigation work, rather than directly tied to the deficiency letter and the motion to compel. *See Maxwell v. S. Bend Work Release Ctr.*, No. 3:09-CV-8, 2010 WL 4318800, at *5 (N.D. Ind. Oct. 25, 2010) ("Time may be excluded if the work most likely would have still been performed in the absence of a motion to compel. Here, it appears that the time spent reviewing documents, however poorly they were organized, probably would have been done regardless of the motion to compel."); *see also State Farm Mut. Ins. Co. v. Ind. Pub. Transp. Co.*, No. 1:22-cv-1113, 2023 WL 2712324, at *1 (S.D. Ind. March 29, 2023) ("Fed. R. Civ. P. 37(a)(5)(A) is not so broad. The Rule authorizes an award of fees for making a motion to compel; it does not authorize an award of fees for every action or expense a party takes related to the discovery dispute from which a motion to compel arises.").

The Court agrees that spending nearly a week of full-time work reviewing a clearly deficient production is facially unreasonable and unnecessary with respect to the motion to compel. *See Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 708 (7th Cir. 2001) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)) ("In determining the reasonable number of hours,

the court should exclude hours that are 'excessive, redundant or otherwise unnecessary.'"). The party moving for attorney fees has the initial burden of establishing that its expended hours are reasonable. *See Tomazzoli v. Sheedy*, 804 F.2d 93, 96 (7th Cir. 1986). And Shambaugh has failed to carry this burden with respect to attorney time spent on reviewing the PDFs, noting in repeated entries only that the review of the text message PDFs "went well beyond simply confirming that the messages were not produced in native format" and that Defendants "must not be allowed to produce incomplete discovery and later object to time spent reviewing such discovery on the grounds that 'it was readily apparent' the discovery was deficient." (ECF No. 170-3 at 6). This argument does not persuade the Court that this review was necessary for the purpose of the motion to compel, rather than for general discovery review. Instead, a third-year associate reasonably could have spent up to two hours reviewing this material in order to draft a sufficiently—but not overly so—detailed deficiency letter.

Therefore, the Court finds reasonable only two hours spent by Barron in reviewing the text message PDFs in preparation of the deficiency letter and motion to compel, meaning Shambaugh will be awarded $650.00 for that work and the remaining time entries will be excluded.

### (b) *Drafting and Revising Deficiency Letter*

Defendants also object to the amount of time billed for drafting and revising the August 30, 2024 Deficiency Letter. Separate from the time billed for analyzing the text message PDFs (reviewed above), Shambaugh's counsel billed a total of 6.4 hours for the just-over-three-page letter. That time consisted of 3.4 hours of drafting and 2.6 hours of revising by Attorney Barron on 8/9/24 and 8/22/24, as well as .4 hours of revising by Attorney Clagg on 8/11/24. (ECF No. 139-1 at 1). Defendants separately object to the time spent by Attorney Clagg because his time entry— which listed his work as "Strategized regarding additional discovery to G&L; reviewed and revised

a discovery deficiency letter to the individual defendants," (ECF No. 139-1 at 1)—encompasses work unrelated to the motion to compel.

From the Court's review of the matter, the deficiency letter included the bulk of the factual work in this discovery dispute, as opposed to the legal and analytical work in the motion to compel. Given that the deficiency letter set the stage for the motion and much of that work later benefited the motion, the Court finds it was not unreasonable to spend 6.4 hours on this letter. As such, these hours will not be excluded or reduced, and Shambaugh will be awarded its requested $2,172 related to drafting the deficiency letter.

*(c) Work Related to Drafting Motion to Compel*

Drafting the motion to compel, however, is a different story. Defendants contend that the billed entries for the work in drafting and revising the approximately ten-page motion to compel, which was work "performed by three different attorneys and a paralegal," is excessive and duplicative. (ECF No. 168 at 2). Because the motion was only 10 pages long and cited merely 3 cases, Defendants assert that the over 30 hours billed by Shambaugh for drafting, proofing, revising, and filing the motion and its related Rule 37 certification is excessive.

The Court emphatically agrees. Shambaugh's motion to compel and related Rule 37 certification is far from a paragon of complexity. The substance of the Brief in Support is barely ten pages and references only a handful of cases, and those mostly in reference to the relevant legal standards. *See generally* ECF No. 117. Much of the work is duplicative of the deficiency letter; of those ten pages, at most two could be considered substantive legal argument, with the rest a mere recitation of the case and discovery facts.

Nevertheless, Shambaugh claims a total of 37.2 hours spent by three attorneys and one paralegal—23.7 by Zach Barron, 4.3 by Mitchell Berry, 1.7 by Jason Clagg, and 7.5 by paralegal

Heather Mink[2]—for preparing, reviewing, revising, and conferring on the two page Motion to Compel, ten page Brief in Support of the Motion to Compel, and related five page Rule 37 certification, for which they requested approximately $10,000. *See generally* ECF No. 139-1. According to the Declaration of Shanna Davidson, Barron and Berry were third-year associates in 2024 and fourth-year associates in 2025, and Clagg is a partner with 20-22 years of experience. (ECF No. 170-2). No declaration indicates the experience of paralegal Mink.

There is no question that three experienced attorneys and a paralegal spending over 37 hours on a non-complex Motion to Compel is unreasonable. *See Romary*, 2011 WL 4948834, at *6 (finding 18.55 hours spent for a seven-page brief and a five-page reply "was an unreasonable amount of time for four attorneys, ranging from three to twenty-eight years of experience, to spend on a non-complex motion to compel"); *EEOC v. Accurate Mech. Contractors, Inc.*, 863 F. Supp. 828, 834–35 (E.D. Wisc. 1994) ("The court finds that 22 hours is an unreasonably large amount of time to have been spent by two experienced attorneys in bringing a motion lacking highly complex legal issues."); *cf. Heneghan v. City of Chicago*, No. 09 C 0759, 2010 WL 3715142, at *2 (N.D. Ill. Sept. 14, 2010) ("[A] first year associate spending slightly over five hours on an eight-page motion to compel is reasonable."). But while Defendants object to the overall amount of time billed for these tasks, they provide no suggestion as to what the appropriate amount of time *should*

---

[2] Defendants categorically object to all of Mink's billed time entries as "time for a non-attorney who has not appeared in this case and, upon review of the Barnes & Thornburg LLP website, appears to be a staff member," which they assert makes these fees unrecoverable. However, they cite no caselaw to support this argument, so the Court finds this argument waived. *See White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021). And even if this argument were not waived, it would be unavailing as courts in this circuit regularly award fees for work performed by paralegals in support of a motion, provided that work is non-clerical and "sufficiently complex to justify the efforts of a paralegal, as opposed to an employee on the next rung lower on the pay-scale ladder." *Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 553 (7th Cir. 1999) (quoting *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1315 (7th Cir. 1996)).

be for these tasks for attorneys with these levels of experience, nor do they include any case citation

for determining reasonableness.

"If a motion to compel consists primarily of facts with minimal or no citations to case law,

a reduction in the number of hours expended in preparing and researching that motion is oftentimes

warranted." *Romary Assocs., Inc. v. Kibbi LLC*, No. 1:10-CV-376, 2011 WL 4948834, at *4 (N.D.

Ind. Oct. 18, 2011); *see also Nw. Nat'l Life Ins. Co. of Milwaukee, Wis. v. Lutz,* 933 F.Supp. 730,

735 (C.D.Ill.1996) (stating that a "brief, which contains little more than the facts and a recitation

of some black-letter law regarding attorney's fee requests should not have consumed 13 hours of

[an attorney's] time"); *Doe v. Howe Military Sch.*, No. 3:95-CV-206, 1996 WL 939352, at *3

(N.D. Ind. Oct. 16, 1996) (reducing hours claimed for drafting a motion to compel by two-thirds

due to the 13-page motion length, citation to two cases, and overall lack of legal complexity); *State

Farm Mut. Ins. Co. v. Ind. Pub. Transp. Co.*, No. 1:22-cv-1113, 2023 WL 2712324, at *1 (S.D.

Ind. March 29, 2023). Additionally, "[w]hen multiple attorneys are simultaneously researching,

preparing, and drafting a single motion, it will inevitably lead to unnecessary duplication, which

the court must take account of in determining the hours reasonably expended." *Id.* at *5.

Generally, courts have found it "not unreasonable on its face" to bill approximately one

hour per page of motion brief. *Struve v. Gardner*, No. 1:19-cv-4581, 2021 WL 1948868, at *3

(S.D. Ind. May 14, 2021); *see also Slabaugh v. State Farm Fire & Cas. Co.*, No. 1:12-cv-1020,

2014 WL 1767088, at *3 (S.D. Ind. May 1, 2014) (noting that even when "courts reduced the

amount of fees requested for lack of substantive brief, it was still reasonable to allow roughly one

page of briefing per hour of work alleged"); *Maxwell v. S. Bend Work Release Ctr.*, No. 3:09-CV-

8, 2010 WL 4318800, at *5 (N.D. Ind. Oct. 25, 2010) (reducing 7.4 hours for drafting a motion to

compel to 3.5 hours for a three page brief with no case law).

Considering the lack of complexity in the motion, the low page count of the accompanying brief and certification, and the level of experience of the attorneys, clearly more hours were generated on this straightforward and non-complex motion than were reasonably necessary. But allowing for even ten hours of work on this motion would be letting Shambaugh double-dip. Given that the heft of the work had already been completed with the deficiency letter, the Court finds that only four hours were reasonably spent drafting the motion and its related documents. Combining the six hours of work already spent drafting the deficiency letter with the four hours reasonably spent on this run-of-the-mill motion gets us to one hour per page of the motion without allowing for double-counting work previously completed.

As to which rate to apply to those four hours of time, given that four people with vastly different hourly rates worked on this motion over a change in calendar year, the Court believes a blended hourly rate of $376.88 is appropriate, which accounts for the average of the 2024 and 2025 rates of Mink, Barron, Berry, and Clagg. *See Gray v. Midland Funding, LLC*, 447 F. Supp. 3d 724, 727 (N.D. Ill. 2019) (averaging the hourly rates for two attorneys to apply to the hours of compensable time); *Ustrak v. Fairman*, 851 F.2d 983, 989 (7th Cir. 1988) (implementing a blended rate approach in similar circumstances).

In sum, the Court will award $1,507.52 for the four hours of work reasonably spent drafting the motion to compel.

### (d) *Work Related to Reply and Motion to Compel Hearing*

Defendants also object to a number of entries in the time between the filing of the Motion to Compel and the preparation for the hearing, during which multiple Shambaugh attorneys billed time related to analyzing and replying to Defendants' briefs related to the Motion. The Court has reviewed these entries (ECF No. 139-1, 1/21/25 Barron; 2/14/25 Berry; 2/14/25 Clagg; 2/19/25

Berry; 2/20/25 Clagg; 2/21/25 Berry; 2/21/25 Clagg) and finds nothing to indicate the tasks were duplicative or unnecessary. Three attorneys spent 5.1 hours researching and drafting a fourteen-page reply, of which the majority includes substantive legal argument. Thus, the Court will award the requested $2,134.50 for work on the reply brief.

Finally, Defendants object to the amount of time billed by Shambaugh's counsel for preparation for and attendance at the Motion to Compel hearing on April 10, 2025. Attorneys Barron, Berry, and Clagg all spent time preparing for and attending the hearing, which lasted approximately thirty minutes, for which the trio billed 9.5 total hours of time. Of these hours, Barron spent 6.4 preparing for the hearing, Berry spent 1.1 hour preparing and .3 hours attending the hearing, and Clagg spent 1.7 hours preparing and attending the hearing. (ECF No. 139-1 at 7–8). In support of this objection, Defendants cite a single case from the District of Oregon in which the Court noted that 'good 'billing judgment' requires attorneys not to bill for more than two attorneys to review pleadings or to attend oral argument.'" *Whitworth v. Nat'l Enter. Sys.*, 2010 WL 1924505, at *6 (D. Or. April 21, 2010) (quoting *Nat'l Warrant Ins. Co. v. Greenfield*, 2001 U.S. Dist LEXIS 7763, at *14 (D. Or. Feb. 8, 2001)). Shambaugh defends its use of three experienced attorneys for a motion hearing as reasonable and not duplicative, citing a single case from the Northern District of Illinois in which the Court generally stated the firm's staffing of the case "with one associate . . . doing the bulk of the work, one partner . . . overseeing that work and corresponding with the client, and another partner . . . pitching in a few times—was reasonable." *Burberry Ltd. v. Yarbrough*, No. 20-cv-6909, 2021 U.S. Dist. LEXIS 221912 (N.D. Ill. Nov. 17, 2021).

While Defendants object to multiple attorneys billing for the preparation for oral argument, the Court is unpersuaded. Indeed, other courts in our circuit have allowed fees for multiple

attorneys preparing together for oral argument despite only one attorney attending the hearing. *See, e.g.*, *REXA, Inc. v. Chester*, No. 17 C 8716, 2024 WL 1815098, at *4 (N.D. Ill. Apr. 9, 2024) ("The Court finds no fault in Mr. Peterka and Mr. Canade working together to prepare for oral argument; it is not unusual for multiple attorneys to collaborate even though only one of the attorneys will participate in the hearing.").

That said, the April 10 hearing lasted barely thirty minutes and mostly recited the issues as already laid out in the deficiency letter, motion, and reply. And although Barron was the only attorney to *participate* in the motion hearing—though Barron made no time entry for April 10 indicating such participation—both Clagg and Berry billed for attending the motion hearing. Ordinarily, the Court would exclude the times of the non-participating members as duplicative. *See id.* (allowing billing for multiple attorneys collaborating to prepare for oral argument, but excluding entries of non-participating attorneys who attended the argument); *Hopgood on behalf of LG v. Astrue*, No. 07-C-671, 2010 WL 11668246, at *3 (E.D. Wisc. Feb. 16, 2010) (excluding hours billed by non-participating attorney for attending oral argument). Given that Barron did not bill for his participation at the hearing, however, and Clagg as the senior counsel was likely supervising, the Court will only exclude the time billed by Berry as duplicative or unnecessary.

Still, billing over eight hours for preparing for and attending a thirty-minute, non-complex motion hearing cannot be reasonable, and Shambaugh has presented no winning argument for establishing why that amount is reasonable. Instead, their defense to Defendants' objections is that Barron spent this time "developing oral argument, drafting summaries of relevant cases, and reviewing key arguments" as well as "reviewing relevant pleadings and exhibits." (ECF No. 170-3 at 27–28). Shambaugh makes no attempt to justify the nearly two hours spent by Clagg, *see id.* at 29, nor does it attempt to explain why Barron needed to spend so much additional time reviewing

work that had already been done, given that no new facts, arguments, or exhibits were put forth at the hearing beyond what had already been stated in the Motion and Reply briefs.

The Court therefore finds it necessary to reduce the hours spent on preparing for and attending the motion hearing to 2.5 hours—1.5 for Barron and 1 for Clagg—resulting in an award of $1,122.50.

2. <u>Vagueness, Block Billing, and Work Unrelated to Motion to Compel</u>

Nearly every one of Defendants' objections to the individual time entries lodges a complaint about the entry being unnecessarily vague or inappropriately block billed, generally with the implication—direct or otherwise—that the time billed was so unrelated to the motion that it should be excluded from the fees determination. Shambaugh categorically defends the entries, noting that cases in this circuit have consistently allowed for block billed time as long as it is reasonable. (ECF No. 170 at 5). As many of the time entries have already been addressed herein, the Court will only consider those entries which have not otherwise been accepted, reduced, or excluded when ruling on this objection.[3]

"In determining the reasonable number of hours, the court should exclude hours that are 'excessive, redundant or otherwise unnecessary.'" *Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 708 (7th Cir. 2001) (quoting *Hensley*, 461 U.S. at 434). Further, "where ambiguous time entries or redacted time entries impede meaningful judicial review, the courts are left with some discretion on how to proceed." *Thomas*, 2023 WL 2649490, at *7 (citation omitted) ("The Court believes that reducing Counsel's purported hours by a reasonable percentage appropriately

_____

[3] The Court has already determined the reasonable time spent on the discovery review, preparation of the deficiency letter, and drafting the Motion to Compel. The entries addressed in this section do not warrant an increase in the amount of time deemed reasonable, but for completeness the Court will address the additional objections not specifically discussed in the prior sections.

resolves the issue caused by the redactions." (citations omitted)).

But fee shifting does not require "auditing perfection[.]" *Crissen v. Gupta*, No. 2:12-CV-00355-JMS, 2014 WL 4449928, at *1 (S.D. Ind. Sept. 10, 2014) (citation omitted). "[A]ttorneys aren't required to record in great detail how each minute of their time was expended, but they should at least identify the general subject matter of their time expenditures." *Smith v. Nexus RVs, LLC*, No. 3:17-CV-815 DRL, 2021 WL 5411078, at *4 (N.D. Ind. Nov. 19, 2021) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983)). "[A]lthough not ideal, block billing is not a prohibited practice in the fee-shifting context." *Loparex, LLC v. MPI Release Techs., LLC*, No. 1:09-CV-01411-JMS, 2011 WL 2066666, at *3 (S.D. Ind. May 25, 2011) (citation and internal quotation marks omitted); *see also Farfaras v. Citizens Bank & Tr. of Chi.*, 433 F.3d 558, 569 (7th Cir. 2006) ("Although 'block billing' does not provide the best possible description of attorneys' fees, it is not a prohibited practice.").

That said, "block billing isn't without consequence." *Loparex, LLC*, 2011 WL 2066666, at *3. "When reviewing block-billed entries, the court must consider whether the entries are 'sufficiently detailed to permit adequate review of the time billed to specific tasks' and whether that time was reasonably necessary." *Thomas v. Shoshone Trucking, LLC*, 2023 WL 2649490, at *8 (S.D. Ind. Mar. 27, 2023) (quoting *Cintas Corp. v. Perry*, 517 F.3d 459, 469 (7th Cir. 2008)). "[Some] courts in this circuit have reduced block-billed fees on a percentage basis or disallowed those entries altogether." *Id.* at *8 (collecting cases); *see also Lock Realty Corp. IX v. U.S. Health, LP*, No. 3:05-CV-715 RM, 2012 WL 90150, at *6 (N.D. Ind. Jan. 10, 2012) (rejecting fees documented by block billing, explaining that "[t]he use of block billing, inclusion of services that can't be identified as related to or compensable in this case, the lack of detail with respect to the type of services rendered and the amount of time expended on each, and the overlap between this

24

case and *Lock II* make it impossible to determine whether the amounts claimed in the challenged entries were reasonable and necessary to this litigation"); *Habitat Educ. Ctr., Inc. v. Bosworth*, No. 03C1023, 03C1024, 04C0254, 2006 WL 839166, at *7 (E.D. Wis. Mar. 29, 2006) ("When a fee petition includes entries that are overly vague or inadequately documented or employs block billing, a court may either strike the problematic entries or (in recognition of the impracticality of performing an item-by-item accounting) reduce the proposed fee by a reasonable percentage." (citing *Harper v. City of Chi. Heights*, 223 F.3d 593, 604 (7th Cir. 2000)).

While the Court agrees with Shambaugh that the time entries are sufficiently detailed to avoid some of the negative consequences of block billing, many entries nevertheless suffer— regardless of the included detail—because they leave the Court unable to determine whether the work listed was related to the motion to compel, meaning it is "impossible to determine whether the amounts claimed in the challenged entries were reasonable and necessary to this litigation." *Lock Realty Corp. IX*, 2012 WL 90150, at *6. Having reviewed the remaining entries, the Court will exclude the following entries based on vagueness or being unrelated to the motion to compel:

- Multiple entries concern time spent planning how best to image the Individual Defendants' phones, once they were turned over in discovery. *See* ECF No. 139-1, 7/23/24 Barron; 8/5/24 Barron; 11/13/24 Berry). Shambaugh's own defense of these entries indicates that these tasks were not undertaken in *making* the motion to compel, but to *avoid* a motion to compel. *See* ECF No. 170-3 at 2 ("The plan to image Individual Defendants' phones was a good faith effort undertaken by Shambaugh to resolve the discovery dispute, the rejection of which by Individual Defendants directly necessitated the Motion to Compel. Had Individual Defendants initially agreed to have their phones imaged—something they were forced to do in the end—the Motion to Compel and accompanying attorneys' fees would not have been necessary."). Because these entries were not sufficiently related to making the motion to compel, they will be excluded.

- On 10/5/24, Clagg billed .05 hours as: "Corresponded with counsel for the individual defendants as to depositions; strategized regarding a deficiency letter to defendants." (ECF No. 139-1 at 1; ECF No. 151 at 12 (reducing requested amount to .05 hours)). This description does not identify whether the strategized deficiency letter was related to the motion to compel, and, considering the only deficiency letter the Court is aware of related

to this motion was sent on August 30, this entry could include unrelated work and thus will be excluded.

- On 10/8/24, Berry billed 1.7 hours as: "Developed litigation strategy; analyzed written discovery responses from defendants, in furtherance of addressing deficiencies; drafted discovery responses with objections to second set of discovery requests propounded by G&L; analyzed deposition transcripts with exhibits, in furtherance of fact gathering to respond to discovery." (ECF No. 139-1 at 1). Despite being sufficiently detailed, the description does not adequately describe the tasks for the Court to determine whether any task was related to the motion to compel.

- On 11/4/24, Clagg billed .2 hours as: "Participated in a discovery planning call." (ECF No. 139-1 at 2). This description does not identify whether the discovery planning was in any way related to the motion to compel and thus could include unrelated work.

- On 12/30/24, Clagg billed .2 hours as: "Strategized regarding the case schedule in light of defendants' discovery deficiencies." (ECF No. 139-1 at 5). This vague description does not identify whether the strategizing was in any way related to the motion to compel or even indicate that the "discovery deficiencies" were related to the Individual Defendants and the text messages at hand, meaning the entry could include unrelated work.

- On 1/6/25, Berry billed .3 hours as: "Communicated with (email) counsel for G&L and the individual defendants, addressing mediation; strategized in furtherance of seeking substitution of expert witness; addressed outstanding discovery." (ECF No. 139-1 at 4). Despite being sufficiently detailed, the entry does not adequately describe the work for the Court to determine whether any task was related to the motion to compel.

- On 1/12/25 and 1/13/25, Mink billed .05 hours and .3 hours, respectively, as conferring either internally or with opposing counsel "regarding document error within Plaintiff's production." (ECF No. 1399-1 at 6). Given that the issue in the motion is the *Defendants'* deficient production, this entry appears to be unrelated to the motion to compel.

- On 1/23/25, Barron billed .3 hours as: "Corresponded with all defense counsel regarding outstanding motions and proposed discovery deadlines in advance of hearing on Defendants' Motion for Extension of Time to Respond to Motion to Compel." (ECF No. 139-1 at 6). Though this entry nominally references the motion to compel, the entry nevertheless does not appear to be a "reasonable expense[] incurred *in making the motion*," Fed. R. Civ. P. 37(a)(5)(A), but instead encompasses general litigation tasks.

- On 3/6/25, Clagg billed .2 hours as: "Corresponded with opposing counsel regarding an upcoming meet and confer; strategized regarding two discovery letters." (ECF No. 139-1 at 7). This vague entry does not indicate which opposing counsel was corresponded with, what the meet and confer covered or who it was with, or whether the two discovery letters were in any way related to the motion to compel. Thus, the entry does not provide adequate detail to determine whether the tasks were related to the motion compel and could include unrelated tasks.

26

- On 3/7/25, Berry billed .4 hours as: "Developed discovery strategy in light of representations from counsel for the individual defendants during meet and confer conference; addressed timeline." (ECF No. 139-1 at 7). While this entry clarifies with which counsel the meet and confer was, it nevertheless does not describe whether the meet and confer or the "timeline" addressed was related to the motion to compel and thus could include unrelated tasks. As such, this entry will be excluded.

- On 3/12/25, Mink billed .1 hours as: "Conferred with Zach Barron regarding Defendants' document production." (ECF No. 139-1 at 7). This vague entry does not provide adequate detail to determine whether the task was related to the motion to compel, given that it does not identify which defendants or documents were being discussed. Thus, this entry will be excluded.

In sum, four hours will be excluded based on vague entries and entries unrelated to making the motion to compel, and no fees will be awarded for this work.

       3.  <u>Other Charged Fees</u>

Defendants object to Shambaugh's request to recover costs labeled as "other charges," arguing these entries are vague and that Shambaugh has done nothing to show the charges are related to the Motion to Compel. Two entries fall under this umbrella: First, on "01/01/2025 – 01/31/2025," Shambaugh billed $2.70 for "168-Pacer Court Filing System Charges." (ECF No. 139-1 at 6). Second, without listing a date but tacking the entry onto the end of the listing of charges, Shambaugh entered a cost of $1,148.00 for "Everlaw Inc – Professional Services; Active Review – eDiscovery Hosting Services Subscription Fees." (*Id.* at 8). Rather than explaining these costs, however, Shambaugh has provided only rote defenses of the entries as "reasonable, appropriate, and directly related to Shambaugh's Motion to Compel" and notes that it "stands by its description of the charge entry." (ECF No. 170-3 at 30–31).

The Court agrees with Defendants that Shambaugh has not met its burden of establishing these costs were "reasonable expenses incurred in making the motion." Fed. R. Civ. P. 37(a)(5)(A). Though the motion and related documents were filed in January 2025, there is nothing in the entry

nor in Shambaugh's briefing to indicate that the PACER filing charges were limited only to the filing of the motion, as opposed to any other filing Shambaugh made during that time period, thus the Court cannot conclude those charges did not include unrelated costs. As to the "eDiscovery Hosting Services Subscription Fees," Shambaugh provides no explanation as to what this subscription was, what the fees covered, how it was related to the motion, or why it was reasonably necessary to incur these fees. Shambaugh has simply given the Court nothing to work with nor any reason to find that these costs were reasonable and thus should be paid by Defendants. *See, e.g.*, *Black v. Mantei & Assocs., Ltd.*, 2024 WL 1681314, at *5 (D.S.C. April 18, 2024) (refusing to award legal resource subscription costs as they were unrelated to the motion and thus unreasonable).

Thus, the Court will sustain Defendants' objections and exclude both entries for "Other Charges."

### 4. "Fees on fees" and Additional Time Entries

In response to the Defendants' lengthy additional briefing, Shambaugh also seeks to recover 72.3 hours in fees incurred litigating its own motion for fees, totaling $18,247.50. (ECF No. 170, 170-1). Despite Defendants' protests to the contrary,[4] Shambaugh is "entitled to recover a reasonable amount of attorneys' fees for litigating the fee issue." *Struve v. Gardner*, No. 1:19-cv-04581, 2021 WL 1948868, at *3 (S.D. Ind. May 14, 2021); *see also Catapult Comm'ns Corp. v. Foster*, No. 06 C 6112, 2009 WL 2707040, at *2 (N.D. Ill. Aug. 25, 2009); *L.H.H. ex rel.*

---

[4] Defendants attempt to distinguish the two cases cited by Shambaugh in their fees-on-fees request by asserting those cases involve different underlying contexts and fee-shifting provisions, such as in the civil rights context. This is unpersuasive, however, as oftentimes courts evaluating Rule 37 requested fees "will look to the Seventh Circuit's caselaw regarding fee sharing in civil rights cases, limiting requests for 'fees-for-fees' to 25% of time spent on a case's merits."*Axis Ins. Co. v. Am. Specialty Ins. & Risk Servs., Inc.*, No. 1-19-cv-165, 2022 WL 950604, at *8 (N.D. Ind. Mar. 30, 2022); *see also Paredes v. Cantu*, No. 4:15-CV-88, 2017 WL 1906165, at *2 (N.D. Ind. May 10, 2017).

*Hernandez v. Horton*, No. 2:13-CV-452, 2015 WL 1057466, at *5 (N.D. Ind. Mar. 10, 2015). That said, Shambaugh must still prove that its requests are reasonable. *See Struve*, 2021 WL 1948868, at *4. In support of its request, Shambaugh includes a similar spreadsheet consisting of time entries from four attorneys and a paralegal, "which includes the time spent addressing Defendants' objections to nearly each of the 85 distinct time entries initially sought by Shambaugh." (ECF No. 170 at 8; 170-1).

Here, an inordinate amount of time and energy was expended by both parties—and now the Court—in litigating the fee petition. Defendants drafted a substantial response in objecting to the motion for fees (ECF No. 146), to which Shambaugh needed to reply (ECF No. 151). But where normal fee disputes might end there, this one continued for nearly half a year and three lengthy briefs more. The Court held a hearing on the motion (ECF No. 155) and ordered additional briefing, as Defendants did not object with particularity to the time entries. Defendants then filed a brief in which they lodged objections to all but 4 of Shambaugh's 85 time entries, oftentimes with multiple categories of objections per entry. (ECF No. 168). Shambaugh necessarily had to expend effort to respond to those objections, and with this additional response brief included its additional fee request for time spent litigating the fee petition. Defendants bring up a number of further objections in their reply—nearly all akin to the objections they have made throughout this matter—but these objections include little to no citations to caselaw beyond two cases discussing the inefficiency and unreasonableness of staffing multiple lawyers on a single fee petition. (ECF No. 171). As such, Defendants' objections to Shambaugh's requested "fees-on-fees" are overruled.

That said, Shambaugh is only entitled to a *reasonable* amount of fees for litigating the fee petition. "The Seventh Circuit and district courts have often reduced fees-for-fees in proportion to the underlying litigation." *D.D.M. by O.M.S. v. Sch. City of Hammond*, No. 2:17-CV-177-TLS,

2020 WL 6826490, at *15 (N.D. Ind. Nov. 19, 2020). Courts have limited reasonable "fees-on-fees" to 25% of time spent on a case's merits. *See Ustrak v. Fairman*, 851 F.2d 983, 987-88 (7th Cir. 1988) (finding a fee request unreasonable where "[f]or every hour spent litigating the merits the plaintiff's attorneys devoted almost 15 minutes to preparing a petition requesting fees for that hour"); *see also Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 553 (7th Cir. 1999) ("If we considered the ratio of fifteen minutes worked on the fee petition for every hour worked on the merits to be 'excessive' in *Ustrak,* we must agree with the district court that it is patently unreasonable for Rossiello . . . to expend the same number of hours, or almost as many, on Spegon's fee petition as he expended on the merits of Spegon's case."). Other courts reduce requested "fees-on-fees" based on higher percentages. *See, e.g.*, *Paredes v. Cantu*, No. 4:15-CV-88, 2017 WL 1906165, at *2 (N.D. Ind. May 10, 2017) (reducing "fees-on-fees" request by 50% and awarding "only 15 hours towards the preparation of the instant Motion for fees" as the requested "30 attorney hours for that document is unreasonably high"); *Struve*, 2021 WL 1948868, at *3 (reducing the amount sought for the fee petition by 60%). Ultimately, "[t]he relevant inquiry is not how many hours the fee applicant requested to be compensated for in preparing the fee petitions. Rather, the relevant inquiry is whether the hours claimed to have been expended on the fee request bear a rational relation to the number of hours spent litigating the merits of the case." *Spegon*, 175 F.3d at 554.

After conceding a number of reductions for block billing in their reply (ECF No. 151 at 12–14), in total Shambaugh claims its attorneys worked 96.8 hours on the motion's merits and a whopping 72.3 hours litigating the fee petition.[5] The Court has no trouble finding this is facially

---

[5] While the Affidavit submitted in support of the fee petition (ECF No. 170-1) requests 72.3 hours and $17,247.50, the detail included with the Affidavit includes 96.8 hours and $29,252.50. *See* ECF No. 170-1 at 9.

unreasonable. Given the likelihood that Shambaugh's counsel significantly overstaffed this matter, the Court finds it necessary to reduce the amount sought for the fee petition to 25% of the amount reasonably spent on the merits. *See Ustrak*, 851 F.2d at 988 (noting that a reduction by two-thirds is "still a generous one; compare *Kurowski v. Krajewski*, 848 F.2d 767, 776 (7th Cir. 1998), where the prevailing party submitted a bill for only 1.6 hours for the preparation of his request for an award of attorney's fees"); *Spegon*, 175 F.3d at 554 (affirming district court's reduction of "fees on fees" from 9 hours to 1.6 hours reasonably spent on a fee petition).

Therefore, the Court awards Shambaugh $1,897.38.

### 5. Summary of Fee Awards

In sum, the Court finds Shambaugh will be awarded:

(a) $650.00 for review of the text message PDFs;

(b) $2,172.00 for preparation of the deficiency letter;

(c) $1,507.52 for drafting the motion to compel and supporting documents;

(d) $2,134.50 for drafting the reply to the motion to compel;

(e) $1,125.50 for preparing for and attending the motion hearing; and

(f) $1,897.38 for litigating the fee petition.

In total, then, Shambaugh's fee petition will be granted in part, in that the requested fees of $52,999.95 will be reduced to $9,486.90 based on the hours reasonably spent litigating this discovery dispute. Defendants' objections to the fee petition are otherwise overruled.

## IV.    Conclusion

In conclusion, Shambaugh's request for attorney fees incurred in making its successful motion to compel (ECF No. 139) is GRANTED IN PART in that the requested fees of $52,999.95 will be reduced to $9,486.90. Defendants' objections to the fee petition (ECF Nos. 146, 168, 171)

are OTHERWISE OVERRULED. The Court ORDERS the Individual Defendants to pay Shambaugh's attorney fees in the amount of $9,486.90 within 30 days.

SO ORDERED on January 20, 2026.

s/ Holly A. Brady
CHIEF JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT